Case No. 17444, Vaughn Mitchell v. Duncan MacLaren Argument not to exceed 15 days in a cell, Mr. MacLaren. Good morning, Your Honor. As Director of the Account Litigation Clinic at the University of Virginia School of Law, I'd like to introduce the two third-year students who have got compliance permission to argue this morning. Angela Denae will be handling the opening argument for 11 minutes. Seth Yost will be handling the rebuttal argument for 4 minutes. Thank you. Thank you. You may proceed. Good morning, Your Honors, and may it please the Court. My name is Angela Denae, and I, along with my co-counsel Seth Yost, represent the appellant Vaughn Mitchell. This case is about a young man, inexperienced with the criminal justice system, who is deceived and manipulated by the interrogation tactics of Detective Collins and then denied the relief he deserved in court. At the heart of Miranda, the centerpiece of this case is a concern over interrogation practices, just like the ones used here, that leave a suspect like Mitchell incapable of making a free and rational choice about answering questions. Despite this, the Michigan Supreme Court found in its cursory opinion that the warnings provided to Mitchell were sufficient. That finding, however, was an unreasonable application of federal law and depended upon an unreasonable determination of the facts in this case. How was it an unreasonable application of the Duckworth case? Yes, Your Honor, the Michigan Supreme Court disregarded important facts that distinguish the present case from the Duckworth case. Importantly, in Duckworth, the suspect in that case was provided an advice of rights form, and the Court determined that that advice of rights form, in its totality, sufficiently conveyed the rights under Miranda. However, in the present case, the suspect Mitchell expressed concern specifically regarding number four, which was, if I cannot afford an attorney, one will be appointed for me without cost by the court prior to any questioning. Mitchell specifically asked for clarification regarding that right, regarding when counsel could be appointed to him, and was provided a response by Detective Collins. He incorrectly told Mitchell that counsel could only be appointed down the line. Not only that, but he also... He didn't say only. He said it would happen down the line. He did say that it would happen down the line. That seemed a lot like Duckworth, where the... I think the advice was very similar, that that would happen actually very far... I mean, in Duckworth, they were fairly clear it would happen pretty... at the end, basically, at the hearing. Here, the officer was actually a little bit more vague, and so, in that sense, arguably suggested counsel would happen sooner than it was appointed in... or what was explained in Duckworth. That's correct, Your Honor. The language in Duckworth said that counsel would be appointed if and when you go to court. However, again, importantly, the court in that case noted that that language was embedded in the Advice of Rights form amongst numerous warnings that reminded the suspect, if I may just turn to my notes, that you have this right to talk to a lawyer for advice before we ask you any questions, to have him with you here during, and then after the if and when you go to court language. They again reminded that if you have... if you choose to answer questions now, again, without a lawyer present, you have the right to stop answering at any point. And in that case, as I mentioned, the suspect did not ask any follow-up questions for any clarification, and in the present case, he did ask for that clarification, and he was provided a response that actually misrepresented the customs in that locality, that a defense attorney was actually... So when Chief Justice Warren wrote Miranda, there was no reference to sort of state law principles or the local law being informative. The point was you had to tell the individual that they had the right to counsel. And your argument seems to turn on the idea that that should be... that state law should somehow influence how that warning is given? In the present case, considering the Duckworth opinion, which seemed to find important the fact that the if and when you go to court language simply anticipated a question about that state's appointment procedure, our position is that it is important, that procedure in that locality. In this case, a defense attorney was specifically on call 24-7 for exactly these purposes. It's a little hard for me to think that this federal constitutional principle somehow turns on the officer correctly characterizing state law. I mean, I thought sort of the broad point was you have to be advised about the right to counsel. And I know in Duckworth it mentioned that as a supporting feature, but I don't necessarily feel like the case sort of turned on that. I can't imagine the federal constitutional principle would turn on the specific vagaries of the local federal or state or local jurisdiction. Yes, of course, Your Honor. And I would also note, though, that that same principle was mentioned again in Powell. The court in that case, again, mentioned when talking about Duckworth, that fact that that if and when you go to court language, again, accurately reflected state appointing procedure. So isn't Michigan law pretty similar to Indiana law from Duckworth, that you have the right to counsel at your hearing? That is correct. So we are referring to a kind of a local procedure in that district and arguing that. A mandated state law procedure. I'm sorry? Not a mandated. Even if somehow state law informed this determination, what you're referring to is not a state law. It's a local custom? That's correct, Your Honor. Yes. So the rule we should write is that the Miranda warning requires that local officers reflect whatever the local custom is in their warning. Again, I think it just goes to the fact that this specific response in this scenario misrepresented to Mitchell overall his right to appointed counsel in that moment. And turning also to even Prysock, if we're moving away from this question of local custom versus state law, Prysock specifically tells us that this right to appointed counsel should not be conveyed in any way different from the right to counsel in general. By asking a follow-up question regarding number four, his right to appointed counsel, and getting this response that this right kicks in down the line, that suggested to Mitchell that his right to appointed counsel was somehow different from this right to counsel in general. Separate and apart from just the sufficiency of the rights he was provided, Mitchell was also provided his Miranda warnings midstream during an interrogation. Now, Mitchell was arrested on September 9, 2008, at 10.30 p.m. He was incarcerated overnight. He was interrogated the next morning for 30 minutes without Miranda warnings. He was returned to lockup. He was again taken out later that afternoon and interrogated again for approximately 30 minutes without Miranda warnings. It was at the point that Mitchell began to provide details regarding opportunity, the fact that he was in the location of the crime, and motive, his prior dispute with the victim, that it was at this point that the detective then ceased that non-Miranda-ized interrogation, brought Mitchell up to a videotaped equipped interrogation room, provided his Miranda warnings, and then continued the interrogation. The Michigan Supreme Court unreasonably applied Dixon when it understood it for standing for this proposition that a midstream warning is only improper when a full confession to the ultimate crime is obtained in the non-Miranda-ized interrogation. In fact, Dixon did not stop its analysis at the point when it determined that a full confession had not been obtained in the non-Miranda-ized interrogation. It went on to consider the fact that there was no evidence that police used Dixon's earlier admission to forgery to induce him to waive his rights to silence later. Instead, the court stated that they were looking for a nexus between the unwarned interrogation and the later warned confession. So I understand that argument,  So there are certain things and certain facts in the record that indicate that Mitchell began to provide in that non-Miranda-ized interrogation details regarding motives, specifically that he had had this altercation over a gun with the victim. He also provided some details regarding opportunity, the fact that he was in the location where the crime took place, the night of the crime. We have... Wasn't his story arguably going to be that the other... Was it his father who was there? Yes. So those aren't necessarily incriminating. I mean, there's facts and there are incriminating facts and those don't necessarily strike me as obviously incriminating facts. And as soon as it got to a point where it might sound more like or certainly like a confession, the officer stopped and said, you know, you need to understand your rights. And our position is that that practice would seem concerning and a fair-minded jurist wouldn't interpret Dixon as standing for that proposition, that a police officer can lead a suspect just up to the point of confessing, stop the non-Miranda-ized interrogation at that point and then Miranda-ize him and proceed to ask those same questions. The officer doesn't necessarily know he's leading to a confession. He may be asking just questions to understand more about the occurrence. And, I mean, this officer, to his credit, he did stop at, I think, the critical point. In some of the cases, really, there was a confession or, I think, more of a confession before the warning was issued. That is correct. In Siebert, there was a full confession to the ultimate crime. But, again, that was not a necessary factor for the court's decision. It was one factor that was considered, but then the plurality in that case proceeded to put forth a number of factors that contributed to their decision that ultimately that was an improper midstream warning. And, again, LSTAT tells us that in circumstances like these where we see this non-Miranda-ized interrogation or non-Miranda-ized questioning and then a Miranda-ized interrogation, specifically in these situations, a careful and thorough administration of Miranda warnings serves to cure the condition that rendered the unwarned statement inadmissible. In this case, as I mentioned before, we simply do not have a careful and thorough administration of the Miranda warnings. Is there an argument to be made, though, if someone starts making some incriminating remarks and the officer stops them and gives them Miranda warnings, that that ought to put the defendant on greater notice than if they would have done the Miranda warnings right away? Your Honor, in this context— Does that sound reasonable? In this context, I would disagree, specifically considering the fact that at this point— The question was, doesn't that sound reasonable? In this context, I don't think that's reasonable. What context is that? I said in an interruption, and wasn't this an interruption? It was, but it was an interruption following 21 hours of being incarcerated, having no knowledge at all of his Miranda rights. There's no showing he was whipped or put with rats or anything like that. The 21 hours is one thing. But all the more reason, isn't it reasonable to suspect that if I'm here 21 hours and I start to say a few things and they say, wait, don't tell me. I want to give you your warnings. Wouldn't that put a reasonable person more on notice? A reasonable person specifically— Than if they had done it 21 hours earlier? In Mitchell's position, I don't think a reasonable person would have understood their Miranda rights. And there's a few facts specifically that I'd like to point out. One is the fact that Detective Collins, when responding to his question about— Your Honor, I see that I'm out of time, but if I may briefly answer your question. Just a brief response, please. Thank you. My question was a yes or no question, so I doubt if it needs a sentence. In that case, Your Honor, our position is that a reasonable person in Mitchell's position would not have been able to understand his Miranda rights in that situation. Thank you. Thank you, Your Honors. Thank you. You may proceed. Good morning, Your Honors, and may it please the Court. Assisting Attorney General Scott Shimkus appearing on behalf of Respondent Warden Duncan McLaren. Mitchell is not entitled to habeas relief in this case because fair-minded jurists could disagree and have disagreed about the adequacy of the Miranda warning in this case. First, the Right to Counsel portion tracked the approved warning in Duckworth v. Egan. And second, Mitchell did not confess to the murder prior to receiving the Miranda warning, and thus there was no confession to repeat after the Miranda warning in line with Bobby v. Dixon. And so we would ask this Court to affirm. So turning to the first issue, this Right to Counsel, as I stated in my brief, it really is hard to fathom a case that tracks the facts of Duckworth as closely as this case does. Given the fact that in Duckworth, the warning was whole, it was full. It warned the defendant that he could stop the interview at any time, whether because he wanted to invoke his right to remain silent or because he wished to have an attorney. And second, that he could have an attorney present before or during the questioning. Now in Duckworth, it anticipated the question of whether, excuse me, the question from the defendant of when he might receive that counsel. It was baked into the warning itself, if and when you go to court. The only difference in this case is that that anticipation was not in the Advice of Rights form. But the Advice of Rights form otherwise did the exact same thing as it did in Duckworth. It said the defendant could stop the interview at any time, whether it was because he wanted to invoke his right to remain silent or because he wished to have an attorney, and that he could have an attorney present during or before the interview. The only difference being that here, Mitchell actually asked Detective Collins when he might receive an attorney. So what does the phrase down the line mean to you? In my mind, Your Honor, and we certainly would argue that, it's exactly the same thing it meant in Duckworth, that if and when he goes to court, down the line, sometime after this interview. But that doesn't mean he couldn't still have an attorney present during this interview. He could stop the interview, receive an attorney later on, and then if he chose to speak after that, they could conduct a second interview. But the interrogator didn't really say that, did he? No. In fact, Your Honor, he said the warning speaks for itself. The Advice of Rights form speaks for itself, that you may have an attorney present before or during the questioning, which means right now, but if you want an appointed attorney, if you cannot afford an attorney, that appointment will happen, quote, down the line. Or, as it said in Duckworth, if and when you go to court. Again, Your Honor. What was the testimony as to Mr. Mitchell, as to how he interpreted the statement? Did he have it? Was there any testimony to that effect? I don't recall if there was. I don't recall any specific testimony from Mr. Mitchell, either sort of in person or through his affidavit, that it meant something other than what Detective Collins said or he interpreted it differently or anything along those lines. Our position is that this warning was just as clear as it was in Duckworth, and because of that, the result here should be exactly the same as it was in Duckworth. Suppose, in this case, in the police waiting room, maybe just 50 feet away, there's a lawyer there, on call, who at a moment's notice could walk in and be the appointed counsel for the defendant. Is that something that we should consider in this circumstance? Well, pursuant to Your Honor's earlier question to the appellant, no, because Miranda doesn't talk about state law and whether the state law provides for when a counsel could be appointed or any sort of local customer convenience of when counsel might be available. And that was contemplating, oh, excuse me. Officers can just turn a blind eye to whatever local procedure, the facts on the ground, or even a lawyer being literally within shouting distance? It's not turning a blind eye because the warning itself, the advice of rights form in this case said you may have counsel present before or during the interview, just as it did in Duckworth. The fact that the counsel might be appointed if they cannot afford one, that that event might happen down the line or if and when you go to court, it doesn't change that advice, it doesn't change that warning if there might be an attorney in the courthouse or, excuse me, in the precinct or anything along those lines. In fact, we know from the Supreme Court's cases that attorneys don't need to be producible on call. If they are, maybe that's a slightly different story, but it doesn't change the advice, it doesn't change the warning, and it doesn't change the adequacy of the warning, especially on collateral review. Your sister counsel argues that. Why did they wait 21 hours and interrogate him twice before giving him these warnings? Well, Your Honor, there is some dispute about how many times he was interviewed beforehand. The detective said it was only one time and it was for only a few minutes before Mr. Mitchell indicated that he, quote, had some involvement in the case and then he stopped the interview and issued the warning. Mr. Mitchell says in his affidavit that there were two interviews. As far as the timing of how long he was held, I'm not sure that plays a role here in terms of whether the warning itself was adequate. In Duckworth, it didn't allude to anything about how long. Well, one can argue, and I suspect your sister counsel does argue, that the longer you stay, the more intimidated you are and the more apt you are to please your captor. I'm sure that is or would be... A reasonable assumption, isn't it? It's certainly reasonable to assume that that would be their argument, yes, Your Honor. Well, I mean, the conclusion is reasonable, too, isn't it? Notice how I use that term, reasonable. Sure. I think it would be reasonable as one factor to consider. I would agree with that. But I don't think it would be a decisive factor. It wouldn't make a difference of whether the warning itself in this case was adequate. And that's the issue at hand, is whether the warning was adequate, both for the right-to-counsel issue and for the midstream issue. Did the warning sufficiently inform the suspect, the defendant, the eventual defendant, of what his rights were? And in this case, it certainly was. So turning to the next issue, Your Honors, the midstream Miranda warning. Again, we have a case on point, Bobby v. Dixon. In that case, the defendant had admitted to some tangential things. He admitted that he forged the victim's name or that he at least wrote the victim's name and sold the victim's car, but claimed it was with permission. And at that point, the detectives ceased the interview. He had gone back to lockup, I believe. He had spoken with an attorney, and then they came back, they issued the warning, and he confessed. That case is different from Siebert, just like this case is different from Siebert. In Siebert, you had a full confession, a warning, and then essentially a mirrored confession, a parallel confession. But that is not what happened in this case. In fact, Detective Collins took it upon – Well, I was going to say, so we know the rule if there's a full confession. There's a pretty bright-line rule about that. How would you – how far do you have to go before there's a constitutional concern in terms of the information you share pre-Miranda? What's your – how would you articulate the test? In terms of this case, I don't think it necessarily needs to be reached, sort of how far you need to go, because this case was so close to Dixon. In this case, at least according to Mitchell, he says that he admitted to, as the appellant put it, the motive and the opportunity that he was in the area at the time and that he had an incident with a gun with the victim the day before. We have very similar sort of tangential, I suppose, admissions in Dixon. In Dixon, he says, I did, in fact, use the victim's name and I sold the victim's car. But then he said something along the lines of he had permission to do that. Those admissions, if you can even call them admissions, are parallel. Those were the exact same situations. In Dixon, that wasn't sufficient to invoke the Siebert midstream Miranda claim. So here, before the warning, and again, we have some discrepancy in the record. Detective Pellin says that Mitchell said he had some involvement. Mitchell says, you know, he says with a little bit more specificity what exactly that was, being that he was in the area and that he had a dispute with the victim. But that's all. That's all that happened before the warning. That stands in stark contrast to Siebert. This case is not Siebert. And then finally, Your Honors, if you were to find an error here, which we certainly do not contend there was any error whatsoever, but as we stated in our brief, we would contend that any error was harmless. Given the, as the Michigan Supreme Court found, given that there was eyewitness testimony both from Ellis Odom and from Vaughn Mitchell, the co-defendant in this case, Mr. Mitchell's father. Excuse me, Vaughn Brown, not Vaughn Mitchell. There was corroborating evidence for those eyewitness accounts. And then Mitchell himself testified at trial. But unless Your Honors have any further questions, I'm happy to answer them. Otherwise, I will briefly conclude here. So cases like this are exactly why Ed Pook accords the deference it does. The Michigan Supreme Court's decisions in this case applying Duckworth and Dixon were eminently reasonable and they should not be disturbed on collateral review. We would ask this Court to affirm. Thank you. Good morning, Your Honors. Just a few points on rebuttal. To start where our friends on the other side started with Duckworth, we did want to point out that even though the warnings were given in Duckworth concurrently, as far as they were all in writing, here we do want to emphasize the fact that when Mitchell asked the clarifying question, those essentially negated his understanding. And there's no way at that point that you can say that the rights were presented all concurrently like they were in Duckworth. Also, we wanted to point out that... I mean, we're not dealing with lawyers here. We're dealing with on-the-street officers. And so you're not going to set a bar that they have to answer the way maybe a lawyer or prosecutor might have answered in response to those questions. No, Your Honor. We have a somewhat lower bar for on-the-street police officers. Your Honor, our position is that regardless of the intent of what the officer says or if it's in line with what a lawyer would say, at the very core of Miranda, it needs to be an accurate... It needs to be able to accurately portray to the suspect what their rights are. And in this case, Detective Collins' response confused what Mitchell thought his rights to counsel were at that moment. So there's no way that we can say that the Miranda rights at this point were accurate, which is at the heart of Miranda here. And also, Detective Collins rushed him to sign the sheet, told him it was just a formality. There was, after that in the transcript, Mitchell had asked a few more, was trying to say some things, and Detective Collins kept telling him, just sign, just sign. You can ask questions later. So all of that in its totality, as Miranda requires, did not show Mitchell that he had a right to counsel at that moment. And this case, on those facts, is very different than Duckworth. It's close. Under AEDPA, don't we defer to the state Supreme Court? Your Honor, we can, even with AEDPA, if there's a clear and convincing error, that the state court unreasonably applied federal law, which is our position here, and using one sentence from Duckworth and not looking at the totality of the Supreme Court precedent, as we said in our briefs, it would not seem in this instance that Mitchell waived his rights. And that is our position with the AEDPA deference. As far as our friends on the other side talked about harmless error, we wanted to point out that the Michigan Supreme Court actually didn't even rule on the tape itself. Their determination of harmless error had to do with Sergeant Fershall's testimony. And so our position is that AEDPA deference is not even warranted on the harmless error point. And with that, the testimony that was given, Odom was the victim's cousin. There was things in the record that indicated that he had been very deceptive with the police up to that point. And so without the videotape, that's really the only thing that the state has to stand on, is this shaky eyewitness testimony from somebody who didn't even see the shots. And then actually the only person they saw shoot the gun was his father, who was acquitted. Aside from that, our position on Mitchell's testimony, the fact that he testified in the first place, was a lot of it had to do with the fact that this evidence was put right in front of the jury, only played for his jury, not played for Von Braun's jury. So he felt the need to get up and clarify. In fact, the first question asked to him by his attorney when he took the stand was about the interrogation. So the error here was not harmless. And third, Siebert was not only concerned about confessions, it was concerned about the nexus. Our friends on the other side pointed to the fact that there's a lot we don't know about the interrogation, which is why the Michigan Court of Appeals actually wanted a remand to have an evidentiary hearing on what happened before the warnings were actually given to him in front of the videotape. I see, Your Honors, that I'm out of time. If there are no more questions, we ask that the district court be reversed and that Mitchell's granted habeas relief in this case. Thank you. And thank you for representing Mr. Mitchell in this matter. Appreciate the efforts of your clinic. And appreciate the arguments on both sides today. The clerk may call the next case, please.